1

2

3

4

5

6

7

8

9

10                    UNITED STATES DISTRICT COURT

11                   EASTERN DISTRICT OF CALIFORNIA

12                          ----oo0oo----

13  GUILLERMO PAZ and PATI PAZ,
                                    NO. CIV. 2:09-cv-01338-FCD-KJM
14          Plaintiffs,

15      v.                          MEMORANDUM AND ORDER

16  LITTON LOAN SERVICING;
    OWNIT MORTGAGE SOLUTIONS,
17  INC.; THE WOLF FIRM; MORTGAGE
    ELECTRONIC REGISTRATION
18  SYSTEMS, INC.; SUMMIT FUNDING,
    INC.; TOD SCRIMA; and DOES 1
19  to 20, inclusive,

20          Defendants.

21                          ----oo0oo----

22

23      This matter is before the court on the motions of Litton

24  Loan Servicing ("Litton"), Summit Funding Inc. ("Summit"), Tod

25  Scrima ("Scrima"), and The Wolf Firm ("Wolf") to dismiss

26  plaintiffs' First Amended Complaint pursuant to Federal Rule of

27  Civil Procedure ("FRCP") 12(b)(6).  Litton and Wolf also move to

28  strike portions of the First Amendment Complaint pursuant to FRCP

1   12(f).[1]   Summit and Scrima alternatively make a motion for a more
2   definite statement pursuant to FRCP 12(e).   Plaintiffs Guillermo
3   Paz and Pati Paz (collectively, "plaintiffs") oppose the motions.
4   For the reasons set forth below, defendants' motions are GRANTED
5   in part and DENIED in part.[2]

6                              **BACKGROUND**

7        Plaintiffs brought this action against Litton, Ownit,
8   Mortgage Solutions, Inc. ("Ownit"), Wolf, Mortgage Electronic
9   Registration Systems, Inc. ("MERS"), Summit, and Scrima
10  (collectively, "defendants") for conduct arising out of a loan
11  and subsequent foreclosure activity.   (Pls.' First Amended
12  Complaint ("Compl."), filed June 25, 2009, ¶ 18.)

13       Plaintiffs allege that they are natives of Mexico and that
14  they speak primarily Spanish.   (Id. ¶ 26.)   They allege that
15  their ability to speak and read English is limited and they have
16  almost no understanding of technical English.   (Id.)

17       Plaintiffs allege that in late December of 2005 and in early
18  January of 2006, "Ophilia," who held herself out as a loan
19  officer employed by Summit, solicited plaintiffs to finance their
20  residence.   (Id. ¶¶ 14, 24.)   Plaintiffs also allege that Scrima
21  is the broker of record for Summit.   (Id. ¶ 15.)

22       During the loan application process, plaintiffs allege that
23  "Ophilia" told plaintiffs that she could get them the "best deal"

24  _____

25       [1]   Because the court dismisses all claims against Litton
     and Wolf, the court does not address the merits of their motion
26   to strike.

27       [2]   Because oral argument will not be of material
     assistance, the court orders this matter submitted on the briefs.
28   E.D. Cal. L.R. 78-230(h).

and the "best interest" rates in the market.  (<u>Id.</u> ¶ 25.)

"Ophilia" also allegedly told plaintiffs that the mortgage loan

at issue was the only loan that they could qualify for and did

not disclose any other options to them.  (<u>Id.</u>)  Plaintiffs claim

that they repeatedly asked for a single fixed-rate loan, but that

"Ophilia" and Scrima allegedly denied their request, advising

them instead that the only loan available to plaintiffs was an

adjustable rate loan.  (<u>Id.</u> ¶ 29.)

Plaintiffs allege that "Ophilia" did not disclose to

plaintiffs that she was actually selling them two loans, which

were an adjustable-rate first mortgage and an interest-only

second mortgage with a balloon payment.  (<u>Id.</u> ¶ 29.)  Plaintiffs

further allege that "Ophilia" advised plaintiffs that she would

refinance the loan into an affordable fixed rate loan after one

year.  (<u>Id.</u> ¶ 30.)  Plaintiffs allege that "Ophilia" represented

to them that the interest rate would be approximately 6%, but

that the actual interest rate for each loan was approximately

10%.  (<u>Id.</u> ¶ 31.)

Prior to closing, plaintiffs allege that they were not

allowed to review any documents.  (<u>Id.</u> ¶ 32.)  At the closing,

plaintiffs allege that no documents were translated into Spanish

and that no translator was present.  (<u>Id.</u>)  Plaintiffs allege

that they had a few minutes to sign the documents and that they

did not receive the copies of a proper notice of cancellation or

the disclosures required by TILA.  (<u>Id.</u> ¶¶ 32, 49.)  Plaintiffs

completed the loan on the property on or about February 24, 2006.

(<u>Id.</u> ¶ 34.)  The terms of the loan were memorialized in a

promissory note and secured by a Deed of Trust ("Deed") on the

1  property.  (Id.)  The Deed identified Ownit as the lender, and
2  Fidelity and Southland Title as trustees for the first and second
3  loan respectively.  (Id.)

4      Plaintiff alleges that a Qualified Written Request ("QWR"),
5  which included a demand to rescind the loan pursuant to TILA, was
6  mailed to Litton on March 31, 2009.  (Id. ¶ 36.)  Plaintiff
7  alleges that Litton has not responded to the QWR.  (Id.)

8      On April 14, 2009, Wolf filed a Notice of Default ("Notice")
9  in Sacramento County.  (Id. ¶ 37.)  Plaintiffs allege that Wolf
10  is not the original trustee and that plaintiffs have not been
11  served with any documents informing them of Wolf's appointment as
12  a substitute trustee or that Wolf was acting for a beneficiary
13  under a Deed of Trust.  (Id. ¶ 38.)

14      In their First Amended Complaint, plaintiffs assert claims
15  for 1) violation of the Truth In Lending Act ("TILA"), 15 U.S.C.
16  §§ 1601 et seq.; 2) violation of the Rosenthal Fair Debt
17  Collection Practices Act ("RFDCPA"), California Civil Code §§
18  1788 et seq., 3) negligence, 4) violation of the Real Estate
19  Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq.,
20  5) breach of fiduciary duty, 6) fraud, 7) violation of California
21  Business and Professions Code § 17200; 8) breach of contract, 9)
22  breach of implied covenant of good faith and fair dealing, and
23  10) wrongful foreclosure.  (Compl.)

**STANDARDS**

24

25  **A.   Motion To Dismiss For Failure To State A Cognizable Claim**

26      Under FRCP 8(a), a pleading must contain "a short and plain
27  statement of the claim showing that the pleader is entitled to
28  relief."  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

4

Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief. Twombley, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a

1  cause of action." Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at

2  1950 ("Threadbare recitals of the elements of a cause of action,

3  supported by mere conclusory statements, do not suffice.").

4  Moreover, it is inappropriate to assume that the plaintiff "can

5  prove facts which it has not alleged or that the defendants have

6  violated the . . . laws in ways that have not been alleged."

7  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council

8  of Carpenters, 459 U.S. 519, 526 (1983).

9      Ultimately, the court may not dismiss a complaint in which

10 the plaintiff has alleged "enough facts to state a claim to

11 relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949

12 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570

13 (2007)).  Only where a plaintiff has failed to "nudge [his or

14 her] claims across the line from conceivable to plausible," is

15 the complaint properly dismissed. Id. at 1952.  While the

16 plausibility requirement is not akin to a probability

17 requirement, it demands more than "a sheer possibility that a

18 defendant has acted unlawfully." Id. at 1949.  This plausibility

19 inquiry is "a context-specific task that requires the reviewing

20 court to draw on its judicial experience and common sense." Id.

21 at 1950.

22 **B.   Motion For A More Definite Statement**

23     A motion for a more definite statement should not be granted

24 unless a pleading is "so vague or ambiguous that a party cannot

25 reasonably be required to frame a responsive pleading." Fed. R.

26 Civ. P. 12(e).  This liberal standard is consistent with FRCP

27 8(a)(2) which allows pleading that contains a "short and plain

28 statement of the claim." See Hutson v. Am. Home Mortg.

6

1  <u>Servicing</u>, 2009 U.S. Dist. LEXIS 96764, at *9 (N.D. Cal. Oct. 16,

2  2009) ("A motion for a more definite statement attacks

3  intelligibility, not simply lack of detail.").  The Federal Rules

4  of Civil Procedure anticipate that the parties will familiarize

5  themselves with the claims and ultimate facts through the

6  discovery process.  <u>See</u> <u>Famolare, Inc. v. Edison Brothers Stores,</u>

7  <u>Inc.</u>, 525 F. Supp. 940, 949 (E.D. Cal. 1981).  Indeed, "where the

8  information sought by the moving party is available and/or

9  properly sought through discovery, the motion should be denied."

10 <u>Id.</u>  However, a plaintiff must not be permitted to use "shotgun"

11 pleading tactics, such as providing inadequate factual bases for

12 his claims, to thwart the defendant's ability to seek dismissal

13 of the claims against him as early in the litigation as possible.

14 <u>See</u> <u>Marx v. Gumbinner</u>, 855 F.2d 783, 792 (11th Cir. 1988).

15                              **ANALYSIS**

16 **A.   Defendants' And Plaintiffs' Exhibits**

17      In ruling upon a motion to dismiss, the court may also

18 consider matters which may be judicially noticed pursuant to

19 Federal Rule of Evidence 201.  <u>See</u> <u>Mir v. Little Co. of Mary</u>

20 <u>Hospital</u>, 844 F.2d 646, 649 (9th Cir. 1988); <u>Isuzu Motors Ltd. v.</u>

21 <u>Consumers Union of United States, Inc.</u>, 12 F. Supp.2d 1035, 1042

22 (C.D. Cal. 1998).  "Even if a document is not attached to a

23 complaint, it may be incorporated by reference into a complaint

24 if the plaintiff refers extensively to the document or the

25 document forms the basis of the plaintiff's claim."  <u>United</u>

26 <u>States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).  "The

27 defendant may offer such a document, and the district court may

28 treat such a document as part of the complaint, and thus may

assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." <u>Id.</u>  The policy concern underlying the rule is to prevent plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998).

Plaintiffs' complaint alleges several causes of action that are premised on defendants' failure to provide certain required disclosures during and after the loan transaction.  Accordingly, as these documents form the bases of the relevant causes of action, the court considers them and assumes that the contents are true for the purpose of a motion to dismiss.

**B.   TILA Violation**

Plaintiffs' First claim alleges that Litton, together with Ownit, violated TILA by failing to provide the required disclosures of the loan terms and the notice of right to cancel prior to the time of closing.  (Compl. ¶¶ 57, 58.)  Through the complaint, plaintiffs also give notice and demand rescission. (<u>Id.</u> ¶ 60.)  Defendant Litton moves to dismiss the claim on the ground that plaintiffs have stated no facts that implicate Litton in the loan transaction.  (Litton Mem. Mot. Dismiss ("Litton's Mem."), filed July 15, 2009, at 3.)  Alternatively, Litton also argues that plaintiffs' TILA claim is barred by the statute of limitations.  (<u>Id.</u> at 4.)

A creditor violates TILA when it fails to provide the required disclosures pursuant to 15 U.S.C. § 1631, and to clearly and conspicuously disclose information relating to the "annual percentage rate" and the "finance charge" pursuant to 15 U.S.C. §

8

1632.  To recover damages arising from alleged TILA violations, a plaintiff must file an action to recover damages "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  However, under Section 1641, loan servicers are not liable under TILA as assignees of the loan unless the servicer is or was the owner of the obligation.  See Feliciano v. Wash. Mut. Bank, FA, 2009 U.S. Dist. LEXIS 71292, at *7 (E.D. Cal. Aug. 3, 2009); Pelayo v. Home Capital Funding, 2009 U.S. Dist. LEXIS 44453, at **12-13 (S.D. Cal. May 22, 2009); de Los Santos v. World Capital Fin., 2009 U.S. Dist. LEXIS 22913, at **7-8 (C.D. Cal. Mar. 9, 2009); Marks v. Ocwen Loan Servicing, 2008 U.S. Dist. LEXIS 12175, at **4-5 (N.D. Cal. Feb. 6, 2008).

In this case, plaintiffs allege that they consummated the loan on or about February 24, 2006.  (Compl. ¶ 34.)  Plaintiffs' complaint specifically identify only Summit, Scrima, and "Ophilia" as the parties participating in the loan transaction and name Ownit as the lender.  (Id. ¶¶ 31-34.)  Plaintiffs allege no facts showing how Litton participated in the loan transaction or that Litton had ever owned the loan at issue.  Instead, plaintiffs allege that defendants, including Litton, have never owned any interest in the loan at issue.  (Id. ¶ 21.)  Moreover, plaintiffs fail to respond to Litton's argument that Litton was not involved in the loan transaction.  As such, plaintiffs' TILA claim fails to allege facts supporting the theory that Litton, as a loan servicer, may be liable for a TILA violation.

Accordingly, Litton's motion to dismiss plaintiffs' First claim is GRANTED.

/////

**C.   RFDCPA Violation**

Plaintiffs' Second claim alleges that Litton and Wolf, together with Ownit and MERS, violated the RFDCPA.  Plaintiffs' claim is premised on "fraud at the inception of the loan," resulting in defendants' use of "unfair and unconscionable means . . . to collect a debt against a void security interest." (Pls.' Opp'n Litton's Mot. Dismiss ("Pls.' Opp'n Litton"), filed Sept. 1, 2009, at 17; Pls.' Amended Opp'n Wolf's Mot. Dismiss ("Pls.' Opp'n Wolf"), filed Oct. 2, 2009, at 10-11.)

Litton moves to dismiss the claim by arguing that Litton is not a debt collector and that a foreclosure does not constitute debt collection under the Act.  (Litton's Mem. at 7.)  Wolf raises the same arguments in its motion to dismiss.  (Wolf's Mem. Mot. Dismiss ("Wolf's Mem."), filed Sept. 16, 2009, at 7.) Litton also moves to dismiss the claim because plaintiffs do not allege any harassing or abusive tactics.  (Litton's Mem. at 8.)

The purpose of the RFDCPA is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."  Cal. Civ. Code § 1788.1(b).  A debt collector violates the act when it engages in harassment, threats, the use of profane language, false simulation of the judicial process, or when it cloaks its true nature as a licensed collection agency in an effort to collect a debt.  See Cal. Civ. Code §§ 1788.10-88.18; see also Hernandez v. Cal. Reconveyance Co., 2009 U.S. Dist. LEXIS 13936, at *13 (E.D. Cal. Feb. 23, 2009) (holding that a RFDCPA claim failed because the complaint lacked allegations of harassment or abuse, false or

10

misleading representations of the debt collector's identity, or
unfair practices during the process of collecting debt).
However, merely alleging that defendants foreclosed on a deed of
trust does not implicate the RFDCPA.  <u>See</u> <u>e.g.</u> <u>Benham v. Aurora</u>
<u>Loan Servs.</u>, 2009 U.S. Dist. LEXIS 78384, at *6 (N.D. Cal. Sept.
1, 2009); <u>Ricon v. Recontrust Co.</u>, 2009 U.S. Dist. LEXIS 67807,
at *9 (S.D. Cal. Aug. 4, 2009); <u>Hepler v. Wash. Mut. Bank, FA</u>,
2009 U.S. Dist. LEXIS 33883, at *11 (C.D. Cal. April 17, 2009).
Furthermore, trustees engaged in the process of nonjudicial
foreclosure have immunity from liability under California Civil
Code § 2924(b).  <u>See</u> Cal. Civ. Code § 2924(b) ("[T]he trustee
shall incur no liability for any good faith error resulting from
reliance on information provided in good faith by the beneficiary
regarding the nature and the amount of the default under the
secured obligation, deed of trust, or mortgage."); <u>see</u> <u>also</u>
<u>Razawi v. FDIC</u>, 2009 U.S. Dist. LEXIS 89512, at *10 (E.D. Cal.
Sept. 8, 2009); <u>Nool v. Homeq Servicing</u>, 2009 U.S. Dist. LEXIS
80640, at *11 (E.D. Cal. Sept. 4, 2009).

Plaintiffs' complaint fails to allege any facts to support
how Litton and Wolf violated the RFDCPA.  Plaintiffs' allegations
generally are premised on the act of foreclosure which does not,
by itself, constitute debt collection under the RFDCPA.[3]

---

[3]   Plaintiffs cite <u>McGrew v. Countrywide Home Loans, Inc.</u>,
628 F. Supp. 2d 1237 (S.D. Cal. 2009), to support their assertion
that some activities carried out pursuant to a foreclosure may
constitute violations of the RFDCPA.  <u>McGrew</u> is distinguishable
from this case because, in <u>McGrew</u>, the plaintiffs alleged that
the defendants made rude and harassing phone calls to them at
home and at their place of employment and persisted in
communicating with the plaintiffs even after the plaintiffs
                                              (continued...)

Plaintiffs also do not allege threats, harassment, or profane language that occurred after the loan was made.[4]  Furthermore, plaintiffs make general allegations against multiple defendants; the allegations in the complaint neither point to any provision of the RFDCPA that Litton or Wolf  purportedly violated nor allege facts that allow the court to infer how Litton or Wolf may have violated those provisions.  In short, plaintiffs' complaint fails to state facts that give rise to a fair inference that Litton and Wolf violated the RFDCPA.  See Larkin v. Select Portfolio Servicing, 2009 U.S. Dist. LEXIS 97656, at *8 (E.D. Cal. Oct. 21, 2009) (holding that allegations that the defendant used "unfair or unconscionable means to collect a debt" are merely conclusions of law when the plaintiff did not allege any facts concerning the frequency, timing, or methods of the debt collection practices).

Accordingly, the motions of Litton and Wolf to dismiss the Second claim are GRANTED.[5]

_____

[3](...continued)
directed the defendants to contact their retained counsel. McGrew, 628 F. Supp. 2d at 1242-43.

[4]    Plaintiffs attempt to salvage the RFDCPA claim by later alleging in their opposition that defendants sent "numerous letters requesting payment of the loan." (Pls.' Opp'n Litton at 17.)  However, merely sending numerous letters does not constitute an actionable offense under the RFDCPA.  See Cal. Civ. Code §§ 1788.10-88.18.

[5]    The court notes that Litton identifies itself as a debt collector in its correspondence with plaintiffs. (Pls.' Request For Judicial Notice Opp'n Litton ("Pls.' RJN Litton") Ex. 1.) However, as the court dismisses the claim on other grounds, the court does not address Litton and Wolf's arguments that they are not debt collectors as defined by the RFDCPA.  The court also does not address the argument that the requirements under the
(continued...)

**D.   Negligence And Breach Of Fiduciary Duty**

The Third claim asserts that defendants breached a duty of care by directing plaintiffs to a loan that they would not otherwise have qualified for under industry standards. (Compl. ¶ 71.) The Fifth claim asserts that defendants Summit and Scrima, together with Ownit, also breached fiduciary duties for the same reason. (Id. ¶ 90.)

"The question of the existence of a legal duty of care ... presents a question of law which is to be determined by the courts alone." First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler, 210 F.3d 983, 987 (9th Cir. 2000). "Absent the existence of duty . . . there can be no breach and no negligence." Nichols v. Keller, 15 Cal. App. 4th 1672, 1683 (1993).

**1.   Negligence Claim Against Litton**

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n., 231 Cal. App. 3d 1089, 1096 (1991). Similarly, a loan servicer does not have a duty to a borrower when its involvement does not exceed the scope of its role as a mere loan servicing company. See Watts v. Decision One Mortgage Co., LLC, 2009 U.S. Dist. LEXIS 59694, at *7 (S.D. Cal. July 13, 2009); Hendrickson v. Popular Mortgage Servicing, Inc., 2009 U.S. Dist.

---

[5](...continued)
federal Fair Debt Collection Practices Act are incorporated into the RFDCPA.

LEXIS 43401, at *20 (N.D. Cal. May 21, 2009); <u>Cataulin v. Wash.</u>
<u>Mut. Bank, FSB</u>, 2009 U.S. Dist. LEXIS 19667, at *14 (S.D. Cal.
Mar. 9, 2009).

Plaintiffs cite no authority to establish that a duty runs
from Litton, as a loan servicer, to plaintiffs.  Plaintiffs only
allege a general duty to avoid harm.  Other than general
allegations against all the defendants in the complaint,
plaintiffs do not allege facts specific to Litton that explain
how Litton exceeded its role as a loan servicer.  Such pleading
does not sufficiently set forth a claim for negligence.

Accordingly, Litton's motion to dismiss the Third claim is
GRANTED with leave to amend.

> **2.   Negligence And Breach Of Fiduciary Claims Against**
> **Summit And Scrima**

A mortgage broker owes a fiduciary duty to their client.
<u>See</u> Cal. Civ. Code § 2079.24; <u>Zimmer v. Nawabi</u>, 566 F. Supp. 2d
1025 (E.D. Cal. 2008).  A mortgage broker acts in a fiduciary
capacity that "not only imposes upon him the duty of acting in
the highest good faith toward his principal but also precludes
the agent from obtaining any advantage over the principal in any
transaction had by virtue of his agency."  <u>Wyatt v. Union</u>
<u>Mortgage Co.</u>, 24 Cal. 3d 773, 782 (1979) (citing <u>Batson v.</u>
<u>Strehlow</u>, 68 Cal. 2d 662, 674-75 (1968)).  This duty obligates
brokers to "make a full and accurate disclosure of the terms of a
loan to borrowers and to act always in the utmost good faith
toward their principals." <u>Wyatt</u>, 24 Cal. 3d at 782 (citing
<u>Rattray v. Scudder</u>, 28 Cal. 2d 214, 223 (1946)).  Accordingly, a

14

broker is liable to his principal for secret profits.  <u>Roberts v.</u>
<u>Lomanto</u>, 112 Cal. App. 4th 1553, 1570 (2003).

Plaintiffs allege that defendants Summit and Scrima breached
their respective duties as loan brokers.  (Compl. ¶ 70.)
Specifically, plaintiffs allege that "Ophilia," as Summit's
employee, should have directed them to a loan that they could
have afforded.  (<u>Id.</u> ¶¶ 24, 28.)  Plaintiffs also allege that
"Ophilia" failed to make accurate disclosures of the loan terms
in order to induce plaintiffs into accepting the loan at issue.
(<u>Id.</u> ¶¶ 29-31.)  Furthermore, plaintiffs allege that no one
provided a Spanish translator during the loan transaction even
though plaintiffs were not proficient in English.  (<u>Id.</u> ¶¶ 26,
32.)  Plaintiffs also allege that Scrima denied plaintiffs'
repeated requests for a fixed rate loan.  (<u>Id.</u> ¶ 29.)  Finally,
plaintiffs allege that defendants directed plaintiffs to the loan
at issue so that defendants could benefit from enhanced
commissions and fees. (<u>Id.</u> ¶ 28.)

Accepting the allegations of the complaint as true, Summit
and Scrima acted as plaintiffs' mortgage brokers and, as such,
owed plaintiffs a fiduciary duty.  Plaintiffs also allege conduct
that may amount to a breach of that duty.

Accordingly, the motion of Summit and Scrima to dismiss
plaintiffs' Third and Fifth claims is DENIED.

### 3.   Negligence Claim Against Wolf

Upon default, the trustee of a deed of trust has only the
duty "to undertake the steps necessary to foreclose the deed of
trust."  <u>Vournas v. Fidelity Nat. Tit. Ins. Co.</u>, 73 Cal. App. 4th
668, 677 (1999).  The trustee's role in preparing for and

conducting a nonjudicial foreclosure sale is defined in

California Civil Code §§ 2924 *et seq.*  <u>Pro Value Properties, Inc.</u>

<u>v. Quality Loan Serv. Corp.</u>, 170 Cal. App. 4th 579, 583 (2009).

"The scope and nature of the trustee's duties are exclusively

defined by the deed of trust and the governing statutes.  No

other common law duties exist."  <u>Id.</u>; <u>see also</u> <u>I. E. Associates</u>

<u>v. Safeco Title Ins. Co.</u>, 39 Cal. 3d 281, 288 (1985) ("[T]here is

no authority for the proposition that a trustee under a deed of

trust owes any duties with respect to exercise of the power of

sale beyond those specified in the deed and the statutes.").

In the complaint, plaintiffs make general allegations

against all defendants and do not allege facts specific to Wolf.

Indeed, plaintiffs' allegations are only that "defendants failed

to maintain the original mortgage note, failed to properly create

original documents, and failed to make the required disclosures."

(Compl. ¶ 72.)  Plaintiffs do not identify a provision in the

statutes or deed of trust that Wolf allegedly violated.[6]

Therefore, plaintiffs have failed to meet their pleading burden.

<u>See</u> <u>Razawi</u>, 2009 U.S. Dist. LEXIS 89512, at *13 (granting a

motion to dismiss a negligence claim against a trustee because

---

[6]     In their opposition, plaintiffs appear to assert that
Wolf is a third-party stranger to the mortgage agreement and has
no legal right to conduct a nonjudicial foreclosure.  (Pls.'
Opp'n Wolf at 5-6, 12.)  Under this theory, Wolf breached the
duties imposed by law on trustees by assuming the role of trustee
after being improperly substituted by MERS.  However, plaintiffs
cite no authority to explain how this substitution was illegal or
how Wolf's assumption of duties as a trustee is a breach of duty.
Plaintiffs must plead "more than labels and conclusions."
<u>Twombly</u>, 550 U.S. at 555.  "[T]he tenet that a court must accept
as true all of the allegations contained in a complaint is
inapplicable to legal conclusions."  <u>Iqbal</u>, 129 S. Ct. at 1949.
Therefore, the court does not address plaintiffs' arguments on
this matter.

16

the plaintiffs did not identify a provision in the statutes or deed of trust that the trustee allegedly violated).

Accordingly, Wolf's motion to dismiss the Third claim is GRANTED.

**E.   RESPA Violation**

Plaintiffs' Fourth claim alleges that Litton, Summit, and Scrima, together with Ownit, violated 12 U.S.C. § 2605 by failing to provide a written explanation in response to plaintiffs' QWR. (Compl. ¶ 80.)  Plaintiffs also generally allege that defendants failed to comply with RESPA's disclosure requirements at the time of closing and that defendants engaged in a pattern or practice of non-compliance of 12 U.S.C. § 2605.  (Id. ¶¶ 79, 81.)

RESPA allows a plaintiff to file actions for violations of 12 U.S.C. §§ 2605, 2607 and 2608.  See 12 U.S.C. § 2614. Sections 2605 and 2607 refer to a lender's obligation to provide disclosures.  Specifically, Section 2605 requires a loan servicer to provide disclosures relating to the assignment, sale, or transfer of loan servicing to a potential or actual borrower in two instances: (1) at the time of the loan application, and (2) at the time of transfer.  12 U.S.C. § 2605.  The loan servicer also has a duty to respond to a borrower's inquiry or "qualified written request."  12 U.S.C. § 2605(e).  A qualified written request is a written correspondence that enables the servicer to identify the name and account of the borrower.  12 U.S.C. § 2605(e)(1).  It also either includes a statement describing why the borrower believes that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.  Id.  The loan servicer then has to

respond by making appropriate corrections to the borrower's
account if necessary and, after conducting an investigation,
providing the borrower with a written clarification or
explanation.   12 U.S.C. § 2605(e)(2).   The statute of limitations
to bring an action for a Section 2605 violation is three years.
12 U.S.C. § 2614.

### 1.   **RESPA Violation Claim Against Litton**

Plaintiffs allege that a QWR was sent to Litton on March 31,
2009 and that Litton has yet to respond.[7]   (Compl. ¶ 36.)   Litton
argues that plaintiffs' purported QWR does not meet the
description in Section 2605(e)(1) because "[p]laintiffs do not
allege the correspondence had inquiries about the servicing of
the loan, only that 'it included a demand to rescind the loan
under the provisions of TILA.'"   (Litton's Mem. at 10.)

Pursuant to § 2605(i), "'servicing' means receiving any
scheduled periodic payments of principal and interest and such
other payments with respect to the amounts received from the
borrower."   According to the allegations in the complaint, the
March 31, 2009 letter "simply disputed the validity of the loan
and not its servicing."   Consumer Solutions REO, LLC v. Hillery,
2009 U.S. Dist. LEXIS 76244, at *28 (N.D. Cal. Aug. 26, 2009);
see MorEquity, Inc. v. Naeem, 118 F. Supp. 2d 885, 900-01 (N.D.
Ill. 2000) (dismissing claim pursuant to § 2605(e) where it
alleged that the QWR implicated a "a forged deed, and

---

[7]   As plaintiffs allege no facts showing Litton's
participation in the loan transaction at the time of the loan
closing, the court only addresses whether plaintiffs have pled a
cognizable RESPA violation claim premised on Litton's alleged
failure to respond to plaintiff's QWR.

irregularities with respect to the recording of the two loans,
but [made] no claim with respect to improper servicing"). As
such, plaintiffs have failed to set forth facts alleging that
they sent a valid and actionable QWR to Litton.

Accordingly, Litton's motion to dismiss the Fourth claim is
GRANTED.

**2.   RESPA Violation Claim Against Summit And Scrima**

Plaintiff alleges that Summit and Scrima violated RESPA at
the time of closing because Summit and Scrima did not comply with
the disclosure requirements. (Compl. ¶ 79.) However, the loan
documents show that plaintiff Guillermo Paz acknowledged on
February 8, 2006 that he received the disclosure required by
RESPA. (Summit's & Scrima's Request For Judicial Notice ("Summit
& Scrima RJN") Ex. 3.) As plaintiffs received the disclosure
that forms the basis for this claim against Summit and Scrima,
plaintiffs cannot allege contradictory facts that Summit and
Scrima failed to provide the disclosures during the loan
transaction. Accordingly, the motion of Summit and Scrima to
dismiss the Fourth claim is GRANTED.

**F.   Fraud**

Plaintiffs' Sixth claim alleges that defendants' conduct
during and after the loan transaction constitutes fraud. (Compl.
¶¶ 85-91.)

"Under California law, 'the indispensable elements of a
fraud claim include a false representation, knowledge of its
falsity, intent to defraud, justifiable reliance, and damages.'"
Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (quoting
Hackethal v. Nat'l Cas. Co., 189 Cal. App. 3d 1102, 1111 (1987)).

To bring a fraud claim, the plaintiff must satisfy FRCP 9(b)'s heightened pleading requirement.  This means that plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  In other words, the plaintiff must include "the who, what, when, where, and how" of the fraud. <u>Vess</u>, 317 F.3d at 1106 (citations omitted).  "The plaintiff must set forth what is false or misleading about a  statement, and why it is false." <u>Decker v. Glenfed, Inc.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994).  Furthermore, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 765-66 (9th Cir. 2007).  The purpose of FRCP 9(b) is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations. <u>Concha v. London</u>, 62 F.3d 1493, 1502 (9th Cir. 1995).

When asserting a fraud claim against a corporation, "the plaintiff's burden . . . is even greater. . . . The plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 645 (1996) (quoting <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal. App. 4th 153, 157 (1991)); <u>see also</u> <u>e.g.</u> <u>Mohammad Akhavein v. Argent Mortgage Co.</u>, 2009 U.S. Dist. LEXIS 61796, at *10 (N.D. Cal. July

17, 2009); <u>Spencer v. DHI Mortgage Co.</u>, 2009 U.S. Dist. LEXIS
55191, at *18 (E.D. Cal. June 30, 2009).

### 1.   Fraud Claim Against Litton And Wolf

Plaintiffs fail to allege any facts to support a fraud claim
against Litton and Wolf.  Plaintiffs simply recite the elements
of a fraud claim as general allegations against all the named
defendants.  Plaintiffs neither substantiate the fraud claim with
any facts nor even attempt to connect factual allegations
specific to each defendant to the recited elements.  Without any
facts in the complaint specifying the false misrepresentations
that Litton or Wolf made or identifying the name of a Litton or
Wolf representative who allegedly made the fraudulent
representations, plaintiffs' fraud claim against Litton or Wolf
cannot survive a motion to dismiss.

Accordingly, the motion of Litton and Wolf to dismiss the
Sixth claim is GRANTED.

### 2.   Fraud Claim Against Summit

Summit argues that this claim is barred by the statute of
limitations, which ran shortly after February 24, 2009.  Summit
contends that plaintiffs should have discovered the actual
interest rate when the first payment was due, soon after the loan
closed on February 24, 2006.  In response, plaintiffs argue that
equitable tolling should apply because the "facts surrounding
this loan transaction [were] purposefully hidden to prevent
plaintiffs from discovering the true nature of the documents."
(Pls.' Opp'n Summit & Scrima Mot. Dismiss ("Pls.' Opp'n Summit &
Scrima"), filed Sept. 1, 2009, at 21.)

1    Under California law, the statute of limitations for a
2  fraud claim is three years.  Cal. Civ. Proc. § 338.  The cause of
3  action accrues when the aggrieved party discovers the facts
4  constituting the fraud.  Id.  "A claim may be dismissed under
5  Rule 12(b)(6) on the ground that it is barred by the applicable
6  statute of limitations only when 'the running of the statute is
7  apparent on the face of the complaint.'"  Saher v. Norton Simon
8  Museum of Art at Pasadena, 2009 U.S. App. LEXIS 18604, at *37
9  (9th Cir. Aug. 19, 2009) (quoting Huynh v. Chase Manhattan Bank,
10  465 F.3d 992, 997 (9th Cir. 2006)).  The applicability of
11  equitable tolling "is not generally amenable to resolution on a
12  FRCP 12(b)(6) motion."  Supermail Cargo, Inc. v. U.S., 68 F.3d
13  1204, 1206 (9th Cir. 1995).  However, the plaintiff must at least
14  plead facts supporting a basis for equitable tolling.  See e.g.
15  Pagtalunan v. Reunion Mortgage, Inc., 2009 U.S. Dist. LEXIS 89994
16  (N.D. Cal. Sept. 29, 2009) (finding that plaintiffs' conclusory
17  assertion that "[d]efendants' failure to effectively provide the
18  required disclosures and notices" was insufficient to equitably
19  toll the statute of limitations); Tanuvasa v. FDIC, 2009 U.S.
20  Dist. LEXIS 87673, at *7 (C.D. Cal. Sept. 23, 2009) (finding no
21  basis for equitable tolling because plaintiff did not plead facts
22  suggesting that defendants took steps to prevent her from
23  discovering the alleged disclosures).
24    Plaintiffs identify "Ophilia" as the Summit representative
25  and states that the misrepresentations occurred during the loan
26  transaction in December 2005 and January 2006, prior to the loan
27  closing.  (Compl. ¶¶ 24-25, 30-31.)  Plaintiffs allege that
28  "Ophilia" represented that the interest rate would be

22

approximately 6%, which induced them into signing the loan
documents.  (<u>Id.</u> ¶¶ 30-31.)  Plaintiffs explain that the
assurance that the interest rate would be approximately 6% was
misleading because the alleged actual interest rate for each loan
was near or over 10%.  (<u>Id.</u> ¶ 30.)

However, because the statements were made in December 2005
and January 2006, and the alleged falsity would been discovered
when the first payment became due, plaintiffs' claim is barred by
the statute of limitations.  Furthermore, plaintiffs do not plead
any facts beyond conclusory assertions to explain why the statute
of limitations should be tolled.

Accordingly, Summit's motion to dismiss the Sixth claim is
GRANTED.

### 3.  Fraud Claim Against Scrima

With respect to Scrima, the court finds that plaintiffs fail
to allege facts to give adequate notice to Scrima of the nature
of the claim.  In the complaint, plaintiffs allege only that
Scrima denied plaintiffs' request for a single fixed-rate loan.
Plaintiffs do not specify any facts explaining why this is a
misrepresentation, much less allege facts showing the other
elements of a fraud claim.

Accordingly, Scrima's motion to dismiss the Sixth claim is
GRANTED.

## G.  Breach Of Contract

Plaintiffs' Eighth claim alleges that Scrima, together with
Ownit, breached a number of agreements with plaintiffs.  (Compl.
¶ 108.)  In California, "[a] cause of action for breach of
contract requires proof of the following elements: (1) existence

of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." <u>CDF Firefighters v. Maldonado</u>, 158 Cal. App. 4th 1226, 1239 (2008).

Plaintiffs, however, fail to allege any facts in the complaint that identify the existence of a contract between Scrima and plaintiffs.  Plaintiffs also allege no facts showing how Scrima breached the contract.  Plaintiffs, instead, make general allegations against Scrima and Ownit without identifying what contract which party entered into and how each party breached the alleged contract.[8]  These allegations do not give Scrima fair notice of the nature the claim against him.

Accordingly, Scrima's motion to dismiss the Eighth claim is GRANTED.

**H.   Breach Of Implied Covenant Of Good Faith And Fair Dealing[9]**

The Ninth claim asserts generally that defendants failed to act in good faith and fair dealing when carrying out their duties under "the contract that is at issue in this action." (Compl. ¶ 114.)

"The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a

---

[8]   Plaintiffs attempt to save the claim by alleging an oral contract that occurred during the loan transaction in January or February of 2006.  (Pls.' Opp'n Summit & Scrima at 25.)  However, the two-year statute of limitations ran in early 2008.  <u>See</u> Cal. Civ. Proc. § 339.  Plaintiffs also do not allege any facts that would allow the court to toll the statute of limitations.  Accordingly, the statute of limitations bars this claim.

[9]   As plaintiffs request that the court dismiss this claim against Wolf, the court need not address Wolf's arguments on this issue.

contractual relationship between the parties." <u>Smith v. City &</u>
<u>County of San Francisco</u>, 225 Cal. App. 3d 38, 49 (1990).  "To
establish a breach of an implied covenant of good faith and fair
dealing, a plaintiff must establish the existence of a
contractual obligation, along with conduct that frustrates the
other party's rights to benefit from the contract." <u>Fortaleza v.</u>
<u>PNC Fin. Servs. Group, Inc.</u>, 2009 U.S. Dist. LEXIS 64624, at
**15-16 (N.D. Cal. July 27, 2009).  The "implied covenant of good
faith and fair dealing is limited to assuring compliance with the
express terms of the contract, and cannot be extended to create
obligations not contemplated by the contract." <u>Pasadena Live,</u>
<u>LLC v. City of Pasadena</u>, 114 Cal. App. 4th 1089, 1093-1094
(2004).  "[T]he implied covenant will only be recognized to
further the contract's purpose; it will not be read into a
contract to prohibit a party from doing that which is expressly
permitted by the agreement itself." <u>Wolf v. Walt Disney Pictures</u>
<u>and Television</u>, 162 Cal. App. 4th 1107, 1120 (2008).

### 1.   Claim Against Litton and Summit

Plaintiffs plead no facts that identify the existence of any
contract between plaintiffs and Litton or Summit.  As this claim
is a derivative of a breach of contract claim, plaintiffs'
failure to allege the existence of a contract between plaintiffs
and each of the defendants is fatal to the claim.

Accordingly, the motion of Litton and Wolf to dismiss the
Ninth claim is GRANTED.

### 2.   Claim Against Scrima

As plaintiff's claim must be predicated on a the existence
of a contract, this claim fails for the same reasons the breach

of contract claim fails.  Accordingly, Scrima's motion to dismiss the Ninth claim is GRANTED.

**I.  Wrongful Foreclosure**

Plaintiffs' Tenth claim alleges a wrongful foreclosure claim against Litton and Wolf.  The claim is predicated on violations of Section 2923.5(b) of the California Civil Code and Section 3301 of the California Commercial Code.

**1.  California Civil Code § 2923.5(b)**

To support the claim that Litton and Wolf violated Section 2923.5(b), plaintiffs allege that defendants failed to record and give notice of the Notice of Default.  (Compl. ¶ 127.) Plaintiffs also premise this allegation on Litton's failure to respond to the purported QWR.  (Id.)

Plaintiffs' allegations do not correspond to the requirements of § 2923.5(b).  Section 2923.5(b) of the California Civil Code merely provides that a declaration shall be included in a notice of default stating that "the mortgagee, beneficiary, or authorized agent . . . has contacted the borrower . . . or tried with due diligence to contact the borrower."  It does not set forth any requirements relating to recording a notice of default or responding to a QWR.  Moreover, the court notes that the operative Notice of Default included a Declaration of Compliance as to section 2923.5(b), which provides that the "mortgagee, beneficiary, or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure."  (Litton's Request For Judicial Notice ("Litton's RJN") Ex. C.)  As plaintiffs have not explained

26

or identified any deficiency with this document, the court accepts that the contents are true.  Therefore, plaintiffs have not stated a claim based on the purported violation of Section 2923.5(b).  <u>See</u> <u>Benham</u>, 2009 U.S. Dist. LEXIS 91287, at *20 (holding that plaintiff did not state a wrongful foreclosure claim based on the violation of Section 2923.5(b) when the plaintiff did not contest the declaration of compliance); <u>see also</u> <u>Kuoha v. Equifirst Corp.</u>, 2009 U.S. Dist. LEXIS 94699, at *12 (S.D. Cal. Oct. 7, 2009).

Accordingly, to the extent that plaintiffs' claim is predicated on a violation of Section 2923.5, defendants' motion to dismiss is GRANTED.

**2.   California Commercial Code § 3301**

To support their claim that Litton and Wolf violated Section 3301 of the Commercial Code, plaintiffs allege that Litton and Wolf have never been in possession of the promissory note, are not beneficiaries, assignees or employees of the note-holder, and, accordingly, are not "entitled to enforce" the security interest in the property at issue.  (Compl. ¶ 22.)  As plaintiffs doubt defendants' legal authority to initiate foreclosure proceedings due to the substitution of Wolf as trustee, plaintiffs assert that possession and production of the original promissory note is necessary to "test the efficacy and legality of the purported substitutions."  (Pls.' Opp'n Wolf at 19-21.)

Section 3301 of the California Commercial Code defines a "[p]erson entitled to enforce" as "(a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of

27

1  the instrument who is entitled to enforce the instrument . . ."

2  However, possession of the original promissory note is not

3  required to carry out a nonjudicial foreclosure.  See e.g. Garcia

4  v. HomEq Servicing Corp., 2009 U.S. Dist. LEXIS 77697, at * 11

5  (E.D. Cal. Aug. 18, 2009); Rangel v. DHI Mortg. Co., Ltd., 2009

6  U.S. Dist. LEXIS 65674, at *24 (E.D. Cal. July 20, 2009); Pantoja

7  v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 70856, at

8  *14 (N.D. Cal. July 9, 2009); Calderon v. Endres, 2009 U.S. Dist.

9  LEXIS 57936, at *8 (S.D. Cal. July 7, 2009).  A mere allegation

10  that a trustee or a lender does not have the original note or has

11  not received it is insufficient to render the foreclosure

12  proceeding invalid. See Neal v. Juarez, 2007 U.S. Dist. LEXIS

13  98068, at *8 (S.D. Cal. 2007).  Accordingly, the court finds that

14  plaintiffs' argument predicated on Litton and Wolf's failure to

15  produce or show possession of the note is unavailing.

16       The court rejects plaintiffs' argument that defendants'

17  failure to show possession of the original promissory note will

18  only engender fraudulent conduct.  When the beneficial interest

19  under the promissory note is assigned, the assignee may exercise

20  a security interest in real property provided that the assignment

21  is acknowledged and recorded.  Cal. Civ. Code § 2932.5.  "When a

22  mortgage is sold, physical transfer of the note is not required."

23  Wood v. Aegis Wholesale Corp., 2009 U.S. Dist. 57151, at *14

24  (E.D. Cal. July 6, 2009) (citing In re Golden Plan of Cal., 829

25  F.2d 705, 708-11 (9th Cir. 1986).  "[B]ecause a party may come to

26  validly own a beneficial interest in a promissory note without

27  possession of the promissory note itself, and because this

28  interest, if recorded on the deed of trust, carries with it the

1  right to foreclose, possession of the promissory note is not a

2  prerequisite to non-judicial foreclosure." Champlaie v. BAC Home

3  Loans Servicing, 2009 WL 3429622 at *14 (E.D. Cal. Oct. 22,

4  2009). "[T]he danger of fraud is minimized by the requirement

5  that the deed of trust be recorded, as must be any assignment or

6  substitution of the parties." Id.

7      The court notes that the document stating the substitution

8  of Wolf as trustee was recorded on July 22, 2009. (Wolf's

9  Request For Judicial Notice ("Wolf RJN") Ex. 3.) That the Notice

10 of Default was recorded on April 14, 2009, three months before

11 the recording of the Substitution of Trustee, does not void the

12 foreclosure proceeding. See Wood, 2009 U.S. Dist. 57151, at *10

13 (citing U.S. v. Hertz, Inc. v. Niobrara Farms, 41 Cal. App. 3d

14 68, 85 (1974)). As plaintiffs cite no other theory beyond the

15 failure of Litton and Wolf to show possession of the original

16 note, plaintiffs' claim cannot survive the motion to dismiss.

17 See Wood, 2009 U.S. Dist. 57151, at **14-15 (granting the motion

18 to dismiss with prejudice because the plaintiff merely alleged

19 that the defendant did not have physical possession of the note

20 and did not identify procedural irregularities that would

21 preclude the nonjudicial foreclosure).

22     Accordingly, Litton and Wolf's motion to dismiss the Tenth

23 claim is GRANTED.

24 **J.   Violation Of California Business & Professions Code § 17200**

25     The Seventh claim asserts that defendants violated Section

26 17200 of the California Business & Professions Code by engaging

27 in unlawful, unfair, and fraudulent business practices. (Compl.

28 ¶ 103.) Plaintiffs predicate this claim on all the other

purported statutory and common law violations alleged in the
complaint.

The Unfair Competition Law ("UCL"), California Business and
Professions Code §§ 17200, *et seq.*, forbids acts of unfair
competition, which include "any unlawful, unfair or fraudulent
business act or practice." Cal. Bus. & Prof. Code § 17200. "The
UCL is broad in scope, embracing anything that can properly be
called a business practice and that at the same time is forbidden
by law." People ex rel. Gallegos v. Pacific Lumber Co., 158 Cal.
App. 4th 950, 959 (2008) (internal citations omitted). However,
a cause of action under this section must be tethered to conduct
that violates a law or a legislatively declared policy. See In
re Tobacco Cases II, 41 Cal. 4th 1257, 1266 (2007) ("By defining
unfair competition to include any unlawful business act or
practice, the unfair competition law permits violations of other
laws to be treated as unfair competition that is independently
actionable") (internal citations omitted); Cel-Tech Commc'ns v.
L.A. Cellular Tel. Co., 20 Cal. 4th 163, 186-87 (1999) (holding
that a claim under Section 17200 that alleged anticompetitive
practices had to be tethered to conduct that violated an
antitrust law).

    **1.   Claim Against Litton And Wolf**

As plaintiffs' other claims against Litton and Wolf do not
survive the motion to dismiss, this claim fails for the same
reasons those claims are deficient.

Accordingly, the motions of Litton and Wolf to dismiss the
Seventh claim is GRANTED.

/////

### 2.    Claim Against Summit

To the extent that this claim is premised on the RESPA violation, fraud, and breach of implied covenant of good faith and fair dealing, this claim fails for the same reasons those claims are deficient.   To the extent that this claim is predicated on the negligence and breach of fiduciary duty claims, for the reasons set forth above, Summit's motion to dismiss is DENIED.

### 3. Claim Against Scrima

To the extent that this claim is premised on fraud, breach of contract, and breach of implied covenant of good faith and fair dealing, this claim fails for the same reasons those claims are deficient.   To the extent that this claim is predicated on the negligence and breach of fiduciary duty claims, for the reasons set forth above, Scrima's motion to dismiss is DENIED.

### K.    Motion For A More Definite Statement

In the alternative, Summit and Scrima request the court to grant a motion for a more definite statement if the motion to dismiss is denied.

The only claims that survive Summit's and Scrima's motion to dismiss are the Third, Fifth, and Seventh claims for relief. While the court finds that plaintiffs' may have alleged some facts to allow the court to infer plausible claims against Summit and Scrima, nonetheless, the Third, Fifth, and Seventh claims are nothing more than blanket allegations against all the named defendants.   Plaintiffs do not make clear in the complaint how Summit and Scrima owe them a duty and attempt to cure this deficiency only in the opposition.   Plaintiffs' tactic of making

blanket allegations in the complaint before asserting new factual allegations in the opposition is not limited to the Third, Fifth, and Seventh claims for relief, but is a deficiency that infects the entire complaint.  In short, the court finds that plaintiffs have adopted "shotgun" pleading tactics to thwart defendants' ability to frame a responsive pleading.  In light of plaintiffs' pleading strategy, the court finds that a motion for a more definite statement is appropriate to allow Summit and Scrima to meaningfully respond to plaintiffs' allegations.  See Marx, 855 F.2d at 792.

Accordingly, for the claims that survive the motion to dismiss, Summit's and Scrima's motion for a more definite statement is GRANTED.

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss plaintiffs' complaint are GRANTED in part and DENIED in part.

(1)  Litton's motion to dismiss the claims against it is GRANTED.

(2)  Summit and Scrima's motion to dismiss the Third, Fifth, and Seventh claims is DENIED.  The motion to dismiss all other claims against them is GRANTED.

(3)  Wolf's motion to dismiss the claims against it is GRANTED.

Defendants Summit and Scrima's motion for a more definite statements is GRANTED.  Plaintiffs are granted fifteen (15) days from the date of this order to file an amended complaint in accordance with this order.  Defendants are granted thirty (30)

1  days from the date of service of plaintiffs' amended complaint to

2  file a response thereto.

3          IT IS SO ORDERED.

4  DATED: November 10, 2009

5

6                                          _____
                                           FRANK C. DAMRELL, JR.
                                           UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33